KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
jcurley@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

JOHN R. CERVINI

                             Debtor.
-----------------------------------------------------------X

Case No. 24-22264(SHL)

Chapter 11
(Subchapter V)

## DEBTOR'S SUBCHAPTER V PLAN

John R. Cervini, the above captioned chapter 11 debtor and debtor-in-possession (the "Debtor") hereby proposes the following Plan pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein:

1.1     *"200 East Erie LLC"* means 200 East Erie LLC, a New York limited liability company, of which the Debtor is a 75% shareholder.

1.2     *"205 Rose Road"* means the real property located at 205 Rose Road, West Nyack, New York 10994, SBL 64.15-1-17, which is the Debtor's primary residence.

1.3     *"1003 Myrtle"* means 1003 Myrtle Estates LLC, a Florida limited liability company, of which Grace Contracting is a 18.25(plus 9.625 unallocated)%  shareholder.

1.4     *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2).

1.5     *"Administrative Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the

Bankruptcy Court.

1.6      *"Allowed"* means that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.7      *"Avoidance Claim"* means any cause of action assertable under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy law.

1.8      *"B&G"* means B&G Contracting Ltd., a New York limited liability company, of which the Debtor was a 20% shareholder.

1.9      *"B&G Damages Action"* means the action pending in New York Supreme Court, Rockland County captioned *B&G Contracting Ltd., Thomas Bertussi, Louis Bertussi, Louis Bertussi as Executor of the Estate of John Bertussi, and Bertussi Contracting, Inc. d/b/a Bertussi's*, assigned Index No. 034697/2018.

1.10     *"Ballot"* means the form transmitted with the Plan to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.11     *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. in effect for this case.

1.12     *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, White Plains Division presiding over the Chapter 11 Case.

1.13     *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for this case.

1.14     *"Bertussi Contracting"* means Bertussi Contracting, Inc. d/b/a Bertussi's.

1.15     *"Bertussi Judgment"* means the Judgment After Trial filed in the B&G Damages Action on January 5, 2024 awarding judgment to the Bertussi against the Debtor in the amount of $1,620,943.00, filed as NYSCEF Doc. No. 624.

1.16     *"Bertussi Preference Claim"* means the Debtor's estate Avoidance Claim against the Bertussi in the amount of $213,486.43.

1.17     *"Bertussis"* means collectively, Thomas Bertussi, Louis Bertussi, and Louis Bertussi as Executor of the Estate of John Bertussi.

1.18     *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.19    "*Cash"* means legal tender of the United States of America or cash equivalents.

1.20    "*Chapter 11 Case*" means the chapter 11 case commenced by the voluntary filing by the Debtor and assigned case number 24-22264(SHL).

1.21    "*Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.22    "*Class"* means a category of Holders of Claims as described in Articles III and IV.

1.23    "*Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.24    "*Debtor"* means John R. Cervini.

1.25    "*Disputed Claim*" means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.26    "*Distribution"* means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

1.27    "*Distribution Address"* means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtor or his agents, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

1.28    "*Distribution Agent"* means if the Plan is confirmed under § 1191(b), the SubChapter V Trustee shall be the disbursing agent.  If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the disbursing agent.

1.29    "*Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order. Within three (3) business days of the occurrence of the Plan's Effective Date, the Debtor will file with the Bankruptcy Court a notice of the Effective Date.

1.30    "*Estate"* means the estate of the Debtor pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.31    "*Exempt*" means any property which the Debtor has exempted on the Schedules filed in the Chapter 11 Case pursuant to § 522 of the Bankruptcy Code.

1.32    "*Final Decree*" has the meaning given to it Bankruptcy Rule 3022.

1.33    "*Final Order*" means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.34    "*Grace Contracting*" means Grace Contracting & Development LLC, a New York limited liability company, of which the Debtor is a 100% shareholder.

1.35    "*Holder*" means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.36    "*Impaired*" means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.37    "*Lien*" has the meaning given to it in § 101(37) of the Bankruptcy Code, i.e., means charge against property to secure payment of a debt or performance of an obligation.

1.38    "*Non-Tax Priority Claim*" means any claim against the Debtor to the extent entitled to priority in payment under § 507(a)(4)-(6) of the Bankruptcy Code.

1.39    "*Non-Exempt Property*" means any property of the Estate within the meaning of § 541 of the Bankruptcy Code that is not Exempt.

1.40    "*Petition Date*" means March 28, 2024.

1.41    "*Plan*" means this Subchapter V Plan dated June 26, 2024, of John R. Cervini under Chapter 11 of the United States Bankruptcy Code, and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.42    "*Priority Claim*" means a Claim, other than an Administrative Claim, that is entitled to priority under § 507 of the Bankruptcy Code.

1.43    "*Priority Tax Claim*" means a claim against the Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.44    "*Professionals*" means those persons or entities: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(2) and (4) of the Bankruptcy Code.

1.45    "*Pro Rata*" means proportionally according to the total amount of Allowed Claims in a particular Class.

1.46    *"RC Real Estate"* means RC Real Estate Development LLC, a New Jersey limited liability company, of which the Debtor is a 100% shareholder

1.47    *"Reorganized Debtor"* means the Debtor on and after the Effective Date.

1.48    *"Reserve Fund"* shall be a fund which shall be established by the Reorganized Debtor after the Confirmation Date, which shall be equal to a sum sufficient to pay disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court.

1.49    *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.50    *"Secured Claim"* means a claim secured by a Lien on property of the Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.51    *"Subchapter V Trustee"* means Gerard R. Luckman as the Court appointed and duly qualified as Chapter 11 Subchapter V Trustee in this Chapter 11 Case.

1.52    *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

1.53    *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

1.54    *"United States Trustee Fees"* means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to 11 U.S.C. § 1930, and interest due and payable under 31 U.S.C. §3717.

## ARTICLE II
## BACKGROUND

2.1    <u>Information Regarding the Debtor</u>

The Debtor is an individual debtor who resides at 205 Rose Road, West Nyack, New York with his wife, Stacie Cervini, and their three young children ranging in age from 17 months to 5 years old. The Debtor's father, Eugene Cervini, also lives at 205 Rose Road.

The Debtor worked in the construction industry for his entire professional career, initially as a licensed union electrician. Currently, the Debtor is the 100% owner and managing member of Grace Contracting. Grace Contracting is a general contractor that performs public and private improvement projects together with real estate development. Grace Contracting maintains its offices at 200 E. Erie Street, Unit 1 W, Blauvelt, New York.

In addition to owning and managing Grace Contracting, the Debtor has an ownership interest in two investment properties. The Debtor is a 75% shareholder of 200 East Erie, which owns a commercial building located at 200 E. Erie Street, Blauvelt, New York. The Debtor is also a 100% shareholder of RC Real Estate, which owns a residential house located at 226 Isabella Avenue, Irvington, New Jersey.

### 2.2   Events Leading to the Filing of the Bankruptcy Case

Between 2015 and April 2018, Grace Contracting's office was located at 62 West Dexter Plaza, Pearl River, New York in the same building where the Bertussis operated Bertussi Contracting, their own general contracting company that performed residential work and contracting and large mechanical work for schools and municipalities. Around the time that Grace Contracting moved into the same building as the Bertussis, the Debtor and his father Gene Cervini, and the Bertussis began discussing collaborating on projects. To that end on June 15, 2016, B&G Contracting Ltd. was formed. Bertussi Contracting would serve as the prime contractor for B&G's jobs, providing bonds and temporary capital for projects, and Grace Contracting would provide estimates, its manpower and oversight for those jobs. In forming B&G, the parties entered into a verbal agreement. Other than the Certificate of Incorporating and S-Corporation Election Form, no other written agreements were entered by the parties[1].

Unfortunately, the parties' relationship deteriorated over the short life of B&G. On February 13, 2018, a meeting took place with all five B&G shareholders, wherein the Cervinis advised the Bertussis that they wanted to dissolve the company and presented a proposed plan for the wind-down. On March 26, 2018, another shareholder meeting took place wherein the Bertussis and Cervinis agreed to discontinue working together. On March 27, 2018, B&G's attorney, at the direction of the Bertussis, sent an e-mail directing that "no further work on behalf of B&G should be performed and that the parties should not represent B&G Contracting Ltd." Notwithstanding, the Bertussis and Bertussi Contracting continued to work on several of B&G's projects. On April 12, 2018, a B&G shareholder meeting was held, wherein the Bertussis voted the Cervinis out as directors and shareholders and voted for B&G to dissolve. On August 1, 2018, the Bertussis formally filed a proceeding for dissolution of B&G and also commenced, together with B&G and Bertussi Contracting, the Damages Action against the Cervinis and Grace Contracting alleging causes of action for breach of fiduciary duty, usurpation of corporate opportunities, misappropriation of trade secrets, and unjust enrichment.

The Dissolution Action was concluded in September 2020 with a decision and order dissolving B&G. The Damages Action continued, and following a bench trial conducted between October 19, 2022 through February 6, 2023, a Decision and Order was entered on December 29, 2023 which awarded damages plus pre-judgment interest against the Debtor in favor of the Bertussis. Judgment was entered against the Cervinis on January 5, 2024, (83 days before the commencement of this Chapter 11 Case) in the amount of $1,620,943.00 (the "Judgment"), computed of $1,091,538.04 for lost profits, and expenses and debt, less a credit of $3,999.48 from withheld profit, plus pre-judgment interest in the amount of $532,029.44, plus $,1375 in costs and disbursements.

---

[1] The S-Corporation election form was prepared for B&G by Bertussi Contracting's accountant, Michael Gutwetter, and it stated that each individual shareholder (Tom, Lou, John B., Gene and John) had a 20% interest. Tom was listed on the S Election Form as President and he was the only formally designated officer of B&G.

The very same day the Judgment was entered, the Cervinis filed a Notice of Appeal in the Appellate Division, 2nd Dept. Notwithstanding, on January 8, 20204, the Bertussis rushed to withdraw and distribute to themselves $213,486.43 from the funds remaining in B&G's bank account (representing the Cervinis' 40% interest in those monies) and filed a partial satisfaction of the Judgment. In addition, on January 16, 2024, the Bertussis commenced a post-judgment collection turnover proceeding against the Debtor, Grace Contracting, and 1003 Myrtle and sought a preliminary injunction, temporary restraining order, and appointment of a receiver.

Prior to the filing of the Chapter 11 Case, litigation between the Debtor and the Bertussis was pending in several forms: there is litigation in the Appeal where the Plaintiffs filed a Cross-Appeal, and there is litigation continuing in the Damages Action where both the Plaintiffs and Defendants filed respective post-trial motions pursuant to NY CPLR 4404 (b) to set aside the Decision and Judgment. Plaintiffs have also served Subpoena Duces Tecum and Ad Testificandum upon the Defendants to enforce and collect upon the Judgment. Recognizing that between all litigation in the Appeal, Turnover Proceeding and Damage Action, in addition to the issuance and compliance with the subpoenas, and any other post-Judgment collection proceedings the Bertussis might have commenced, there was no end in sight to the dispute with the Bertussis and it easily continue for several years. While the Debtor believes that the Appeal and his post-trial motion would prevail, in the interest of ending the litigation with the Bertussis, the Debtor files for chapter 11 bankruptcy relief so he could restructure my debts and propose a plan of reorganization.

### 2.3    Description of the Debtor's Assets and Liabilities

The Debtor's significant assets consist of: (i) 205 Rose Road, (ii) Cash Accounts, (iii) 100% Ownership of Grace Contracting, (iv) 75% Ownership of 200 East Erie, and (v) 100% Ownership of RC Real Estate Development LLC.

### (a)    205 Rose Road

The Debtor owns his primary residence, 205 Rose Road, with his wife, Stacie Cervini, as tenants by the entirety. The fair market value of 205 Rose Road based on an appraisal dated March 14, 2024 is $690,000. A copy of the appraisal is annexed hereto as **Exhibit A**. The estimated closing costs of selling 205 Rose Road are $50,800, which consists of a 6% broker fee based on the appraised value, and $10,000 closing costs. The balance due on the mortgage on 205 Rose Road is approximately $447,700. The total equity in 205 Rose Road is $181,500. The Debtor claimed $179,975 homestead exemption in 205 Rose Road. It is unlikely that the Debtor's interest would be valued at 100%, but even if the Debtor were allocated 100% of the value, only $1,525 of the value would not be exempt. However, since the Debtor's interest in 205 Rose Road is less than 100%, the value of the Debtor's on-exempt interest in 205 Rose Road is $0.

### (b)    Cash Accounts

The Debtor has three (3) debtor-in-possession bank accounts maintained at Key Bank, LPL Financial Investment Account (owned with Stacie Cervini), and stock account with Knightscope, Inc. The value of these accounts are listed below:

| | |
|---|---|
| Key Bank DIP Account ending in ****1319 | $9,871.40 |
| Key Bank DIP Account ending in ****4406 | $4,039.28 |
| Key Bank DIP Account ending in ****9895 | $3,571.16 |
| LPL Financial Account ending in ****6336 | $5,839.50 |
| Knightscope, Inc Stock Account | $7,640.00 |

(c)     100% Ownership of Grace Contracting

The Debtor is the 100% owner of Grace Contracting. Grace Contracting is a general contractor that performs public and private improvement projects. The liquidation value of Grace Contracting, based on the value of its assets and liabilities on its balance sheet is $0, summarized below (excluding 1003 Myrtle).

**Grace Contracting Balance Sheet 12/31/2022**
**(Based on 2022 Federal Tax Return)**

**ASSETS**

| | | | |
|---|---|---|---|
| Line 1 | Cash | | $   467,596.00 |
| Line 6 | Other Current Assets | | $ 1,040,957.00 |
| | Other Rec | $ 908,803.00 | |
| | ERTC | $   88,704.00 | |
| | Loan - Real Estate LLC | $   22,450.00 | |
| | Prepaid Rent | $   21,000.00 | |
| Line 7 | Loan to Shareholder (uncollectible) | $ 427,637.00 | $              - |
| Line 10 | FF&E, Machinery, Equip, Vehicles, Leasehold Improv (Less Depreciation) | | $   528,968.00 |
| | | **TOTAL** | **$ 2,037,521.00** |

**LIABILITIES**

| | | | |
|---|---|---|---|
| Line 18 | Current Liabilities (credit card and tax payables only) | | $   137,770.00 |
| Line 19 | Loan from SH | | $       5,620.00 |
| 17&20 | Long Term Liabilities (Excl EIDL loan) | | $   329,809.00 |
| Line 21 | EIDL Loan | | $ 2,073,315.00 |
| | | **TOTAL** | **$ 2,546,514.00** |
| | | **EQUITY** | **$  (508,993.00)** |

NOTE: Contract Receivables and accounts payable are excluded since in a liquidation, Grace Contracting would be defaulted and the bonding company would take over the projects to collect the receivables and pay the payables. There would likely be a claim due to the bonding company, which is not included above.

NOTE: Asset and Liabilities related to Real Estate Investments are not included above.

A copy of Grace Contracting's 2022 Federal Tax Return is attached as **Exhibit B**. Most of Grace Contracting's contracts require Grace Contracting to have bonding with a surety company. Grace Contracting's bonding with a surety company is based upon the Debtor's financial history, as well as the Debtor's historical operational abilities. Given that the ability of Grace Contracting to obtain bonding is intertwined with the Debtor, the sale and transferability of the Debtor's interest in Grace Contracting is extremely limited, if it is transferrable at all.

Grace Contracting has a minority interest in 1003 Myrtle, which is a development project for a 14-lot single family subdivision in Valrico, Florida. The property was purchased on August 31, 2023, and is subject to a mortgage and construction loan. A copy of the closing statement for 1003 Myrtle is attached as **Exhibit C.** The project is still in the permit phase and has not yet "broken ground." Grace Contracting also owns a development project of a 52-acre plot in Venice, Florida, which was intended to be developed into a luxury recreational vehicle park. Unfortunately, this project has not materialized, and is subject to a right of first refusal.

| 1003 Myrtle Balance Sheet | | |
|---|---|---|
| **ASSETS** | | |
| Cash (OB&T Checking Account  ****9466 Balance 2/29/24) | $ | 10,849.61 |
| 1004 Myrtle Road, Valerico , FL (Based on Purchase Price 8/31/23) | $ | 1,336,000.00 |
| TOTAL | $ | 1,346,849.61 |
| | | |
| **LIABILITIES** | | |
| Loan/Mortgage on 1003 Myrtle Road | $ | 2,913,800.00 |
| TOTAL | $ | 2,913,800.00 |
| EQUITY | $ | (1,566,950.39) |

(d)    75% Ownership of 200 East Erie

The Debtor is a 75% owner of 200 East Erie, which owns a building located at 200 East Erie Street, Blauvelt, New York. The building is 5,760 square foot, 2-floor office building. The property was purchased om May 9, 2022 for $1,175,000. Based on a valuation report, the property is valued between $1,100,000 and $1,300,000. A copy of the valuation report is attached as **Exhibit D.** After closing costs and payment of mortgage and debts, there is no value in 200 East Erie, as summarized below.

| 200 East Erie Balance Sheet | | |
|---|---|---|
| **ASSETS** | | |
| Cash (Key Bank Checking Account  ****5139 Balance 12/31/23) | $ | 11,765.68 |
| 200 East Erie St, Blauvelt, NY (Based on valuation dated 3/20/2024) | $ | 1,175,000.00 |
| TOTAL | $ | 1,186,765.68 |
| | | |
| **LIABILITIES** | | |
| Mortgage on 200 East Erie St | $ | 885,000.00 |
| Payable to S. Sulivan | $ | 223,250.00 |
| TOTAL | $ | 1,108,250.00 |
| Liquidation Costs (6% broker fee, $10,000 closing costs) | $ | 80,500.00 |
| Equity | $ | (1,984.32) |

(e)    100% Ownership of RC Real Estate Development LLC

The Debtor is a 75% owner of 200 East Erie, which owns a building located at 200 East Erie Street, Blauvelt, New York. The building is 5,760 square foot, 2-floor office building. The property was purchased om May 9, 2022 for $1,175,000. Based on a valuation report, the property is valued between $1,100,000 and $1,300,000. A copy of the valuation report is attached as **Exhibit D.** After closing costs and payment of mortgage and debts, there is no value in 200 East Erie, as summarized below.

| RC Real Estate Balance Sheet | | |
|---|---|---|
| **ASSETS** | | |
| Cash (Flagstar Checking Account  ****5669 Balance 2/29/24) | $ | 8,202.41 |
| 226 Isabella Ave, Irvington, NJ (Based on valuation dated 3/19/2024) | $ | 291,400.00 |
| **TOTAL** | **$** | **299,602.41** |
| **LIABILITIES** | | |
| Mortgage on 226 Isabella Ave | $ | 98,000.00 |
| **TOTAL** | **$** | **98,000.00** |
| Liquidation Costs (6% broker fee, $10,000 closing costs) | $ | 27,484.00 |
| **Equity** | **$** | **174,118.41** |

### BELOW IS A SUMMARY OF THE DEBTOR'S ASSETS:

| ASSETS | | | Non-Exempt | |
|---|---|---|---|---|
| Real Property | | | | |
| 205 Rose Road, Wesy Nyack, NY 10994 | $ | 680,000.00 | $ | - |
| Cash, Bank Accounts, Investment, & Stock Accounts | | | | |
| Key Bank DIP Account ending in ****1319 | $ | 9,871.40 | $ | 9,871.40 |
| Key Bank DIP Account ending in ****4406 | $ | 4,039.28 | $ | 4,039.28 |
| Key Bank DIP Account ending in ****9895 | $ | 3,571.16 | $ | 3,571.16 |
| Key Bank DIP Account ending in ****6336 | $ | 5,839.50 | $ | 5,839.50 |
| Knightscope Inc. Stock Account | $ | 7,640.00 | $ | 7,640.00 |
| Retirement Account | | | | |
| Balance as of 2/29/2024 | $ | 7,064.76 | $ | - |
| Life Insurance Policy | | | | |
| Term Life Insurance Policy (Cash Surrender Value) | $ | - | $ | - |
| Miscellaneous Household Furnishings, Wearing Apparel & Jewelry | | | | |
| Estimated Value | $ | 17,000.00 | $ | - |
| Firearms, hobby equipment, collectibles | | | | |
| Estimated Value | $ | 1,500.00 | $ | - |
| 100% Ownership of Grace Contracting & Development LLC | | | | |
| General Contracting Company and 27.875% owner of 1003 Myrtle Estates LLC | | | | |
| Estimated Liquidation Valuation | $ | (508,993.00) | $ | - |
| 27.875% Ownership of 1003 Myrtle Estates, LLC (Owned by Grace | | | | |
| Real Estate Development Project | | | | |
| Estimated Valuation | $ | (1,566,950.39) | $ | - |
| 75% Ownership of 200 East Erie LLC | | | | |
| Estimated Valuation | $ | (1,488.24) | $ | - |
| 100% Ownership of RC Real Estate Development LLC | | | | |
| Owns real estate located at 226 Isabella Ave, Irvington NJ | | | | |
| Estimated Valuation | $ | 174,118.41 | $ | 174,118.41 |
| Other Amounts Owed to Debtor | | | | |
| $15,000 Loan due to Debtor | $ | 15,000.00 | $ | 15,000.00 |
| **TOTAL NON-EXEMPT ASSETS** | | | **$** | **220,079.75** |

**BELOW IS A SUMMARY OF THE DEBTOR'S LIABILITIES:**

| SECURED CLAIMS | | | | | |
|---|---|---|---|---|---|
| Name | Scheduled/Claimed Amount | | POC# | Disputed | Notes |
| | | | | | |
| Ally Bank | $ | 722,290.91 | 11 | | Chevy Silverado |
| HomeBridge Financial Service Inc | $ | 447,700.00 | | | 205 Rose Rd |
| Keybank NA | $ | 879,505.64 | | | 200 E Erie |
| Sheffield Financial | $ | 14,207.00 | | | Equipment |
| ACAR Leasing Ltd dba GM Financial Leasing | $ | 10,779.27 | 1 | | |
| **TOTAL SECURED CLAIMS** | **$** | **2,074,482.82** | | | |

| PRIORITY CLAIMS | | | | | |
|---|---|---|---|---|---|
| Name | Scheduled/Claimed Amount | | POC# | Disputed | Notes |
| Department of the Treasury | $ | 1,617.00 | 4 | | |
| **TOTAL PRIORITY CLAIMS** | **$** | **1,617.00** | | | |

| GENERAL UNSECURED CLAIMS | | | | | |
|---|---|---|---|---|---|
| Name | Scheduled/Claimed Amount | | POC# | Disputed | Notes |
| American Express | $ | 19.00 | | | |
| Capital One Bank | $ | 637.89 | 7 | | |
| Discover Bank | $ | 19,442.65 | 2 | | |
| Great Midwest Bonding Company | $ | - | | | |
| JP Morgan Chase Bank | $ | 460.00 | 5 | | |
| JP Morgan Chase Bank | $ | 2,913.44 | 6 | | |
| JP Morgan Chase Bank | $ | 15,566.02 | 8 | | |
| Keybank NA | $ | 15,286.54 | 3 | | |
| Keybank NA | $ | 50,000.00 | | | |
| Keybank NA | $ | 924,410.00 | 16 | | |
| Litchfield Cavo LLP | $ | - | | | |
| NBT Bank, National Association | $ | 100,200.00 | 9 | | |
| Rogers, Habas & Eisen, P.C. | $ | 117,667.99 | 10 | | |
| Salisbury Bank and Trust Company | $ | 150,000.00 | | | |
| Synchrony Bank | $ | 166.38 | 15 | | |
| Thomas  Bertussi | $ | 1,361,379.66 | 12 | Disputed | Duplicative |
| Estate of John Bertussi | $ | 1,361,379.66 | 13 | Disputed | Duplicative |
| Louis Bertussi | $ | 1,361,379.66 | 14 | Disputed | Duplicative |
| U.S. Small Business Administration | $ | 2,000,000.00 | | | |
| **TOTAL GENERAL UNSECURED CLAIMS** | **$** | **4,758,149.57** | (Excludes POC 13 & 14) | | |

## 2.4   Debtor's Current and Historical Income

The Debtor has worked for Grace Contracting since 2010, which has been his sole source of income. While the Debtor's annual gross salary is $124,000, when Grace Contracting has cash flow restraints and difficulties collecting on its receivables, he forgoes salary so that the business can keep operating. The Debtor's income for 2021, 2022, and 2023 are summarized below:

| | **2021** | **2022** | **2023** | **Average** |
|---|---|---|---|---|
| Salary | $ 124,800.00 | $ 38,000.00 | $124,000.00 | $ 95,600.00 |

The Debtor projects that he will continue to receive the same base annual gross salary of $124,000 going forward, with periodic dividend payment from Grace, as available. The Debtor projects these dividends to be approximately $15,000 per year. In addition, the Debtor's wife contributes to the household expenses. Below is the Debtor's three- year projection of income and expenses (the "Projection"):

| HOUSEHOLD INCOME | | |
|---|---|---|
| Debtor | | |
| Gross Annual Wages | $ | 124,000.00 |
| Less Tax, Medicare, & Soc Sec | $ | (37,200.00) |
| Net Wages | $ | 86,800.00 |
| Dividends | $ | 15,000.00 |
| Non-Debtor Spouse | | |
| Gross Annual Wages | $ | 80,000.00 |
| Less Tax, Medicare, & Soc Sec | $ | (24,000.00) |
| Net Wages | $ | 56,000.00 |
| Total Household Net Annual Income | $ | 157,800.00 |
| | | |
| HOUSEHOLD EXPENSES | | |
| Mortgage | $ | 46,800.00 |
| Home Maintenance | $ | 1,200.00 |
| Utilities | $ | 7,200.00 |
| Water | $ | 1,200.00 |
| Phone Cable Internet | $ | 3,600.00 |
| Food | $ | 21,600.00 |
| Household Supplies | $ | 6,000.00 |
| Childcare | $ | 30,000.00 |
| Clothing Laundry | $ | 3,600.00 |
| Personal Care | $ | 2,400.00 |
| Medical Dental Co-pay | $ | 1,200.00 |
| Entertainment, Kids Extracurricular | $ | 3,600.00 |
| Transportation | $ | 6,000.00 |
| Life Insurance Premium | $ | 1,500.00 |
| Car Insurance Premium | $ | 1,872.00 |
| Non-Debtor Spouse Car Pymt | $ | 4,800.00 |
| Total Household Expenses | $ | 142,572.00 |
| | | |
| Projected Disposable Income | $ | 15,228.00 |

## 2.5   Projected Recovery of Avoidable Transfers

On January 5, 2024, 83 days before the commencement of this Chapter 11 Case, Judgment was entered against the Debtor in favor of the Bertussis in the amount of $1,620,943.00. On January 8, 2024, 80 days before the commencement of this Chapter 11 Case the Bertussi withdrew $213,486.43 from the B&G bank account (representing the Cervinis' 40% interest in those monies)

to pay down the Judgment. The entry of the Judgment and the subsequent transfer to partially satisfy the Judgment are considered a preferences and avoidance transfers under Section 547 of the Bankruptcy Code. The Debtor intends to commence an Adversary Proceeding and file a complaint seeking to have the Judgment reclassified as an unsecured claim, and compelling the Bertussis to return the $213,486.43 transfer.

## ARTICLE III
## DESIGNATION OF CLAIMS

All Claims, as defined herein against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

3.1     Classification of Claims. Section 2.2 sets forth the designation of the Classes of Claims. A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes.

Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Claims, Administrative Professional Fee Claims, United States Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 3.1 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

3.2     Classes. For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

Class 1: shall consist of the Allowed Secured Claims.
Class 2: shall consist of the Allowed Non-Tax Priority Claims.
Class 3: shall consist of the Allowed General Unsecured Claims.

## ARTICLE IV
## TREATMENT OF CLAIMS UNDER THE PLAN

The treatment of claims under the Plan is as follows:

4.1 Unclassified Claims.

(a)     Allowed Administrative Claims other than Administrative Professional Fee Claims: These Allowed Claims shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative

Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor. The Debtor estimates that Allowed Administrative Claims in the ordinary course to be $-0-.

(b)    Allowed Administrative Professional Fee Claims: All awards or allowances by the Bankruptcy Court of Professionals fees and expenses, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The Debtor estimates all Allowed Administrative Professional Fee Claims, net of retainer payments to be $50,000.

(c)    Priority Tax Claims: Allowed Priority Tax Claims shall be paid in full, in Cash, on the Effective Date. The Debtor estimates Allowed Priority Tax Claims to be $1,617.00.

(d)    Subchapter V Trustee Fees: Under the Plan, the Subchapter V Trustee's reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred through and including the Confirmation Date under Sections 330(a), and 326(a) and (b) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between the Subchapter V Trustee and the Debtor or, on and after the Effective Date, the Reorganized Debtor. The Reorganized Debtor shall comply with the reporting requirements of the Office of the United States Trustee until the entry of a Final Decree or dismissal or conversion of the case and shall file quarterly reports on January 15, April 15, July 15 and October 15 of each year until entry of a Final Decree. The Debtor estimates the Subchapter V Trustee's fees and expenses to be approximately $15,000.00.

4.2    Classified Claims

(a)    Class 1: Class 1 shall consist of Allowed Secured Claims. No pre-petition arrears are owed to Class 1 Claims. The Debtor shall continue to remit post-petition payments to Class 1 Claims pursuant to the contractual terms. Class 1 Claims are not Impaired under the Plan, holders are not entitled to vote on the Plan, and are deemed to accept the Plan. There will be no payment to Class 1 Claims under the Plan.

(b)    Class 2: There are no Non-Tax Priority Claim against the Debtor. Class 2 Claims are not Impaired under the Plan, holders are not entitled to vote on the Plan, and are deemed to accept the Plan. There will be no payment to Class 2 Claims under the Plan.

(c)    Class 3: Class 3 shall consist of the Allowed Unsecured Claims. Each holder of an Allowed Unsecured Claim shall receive a distribution, Pro Rata, on the Distribution Date, from the Plan Distribution Fund, after distribution to all unclassified Claims and funding of the Post Confirmation Reserve. The Debtor estimates an approximate 8% distribution to Class 3 Claims, with the first *pro rata* distribution being made on the Effective Date. Class 3 Claims are Impaired and holders are entitled to vote under the Plan.

**ARTICLE V**
**CONFIRMATION OF THE PLAN**

5.1    Voting by Impaired Classes of Claims: The Holders of Claims in Class 3 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited. A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

5.2    Acceptance by Impaired Classes of Claims: If Class 3 votes to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will seek confirmation of the Plan under §§1191(a) and 1129(a), other than 1129(a)(15) of the Bankruptcy Code.

5.3    Rejection by Impaired Classes of Claims: If Class 3 does not vote to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will seek confirmation of this Plan pursuant to Section 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION**

6.1    Means of Implementation. The Plan will be funded from (a) liquidation of the Debtor's interest in RC Real Estate in the amount of $175,000, (b) recovery of the Bertussi Preference Claim in the amount of $106,743.22 (50% of $213,486.43), and (c) quarterly contribution of $3,750, payable in twelve (12) equal quarterly payments commencing on the Effective Date, and thereafter on the 30th day of September, December, March, and June of each year, and concluding on June 30, 2027.

6.2    Professional Fees Post-Confirmation. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

15

6.3     <u>Post-Confirmation Duties of the Subchapter V Trustee.</u> If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, following the entry of the Confirmation Order and substantial consummation of the Plan, the Subchapter V Trustee services shall terminate as contemplated by Section 1183(c) of the Bankruptcy Code.

## ARTICLE VII
## <u>SUBCHAPTER V PROVISIONS</u>

7.1     <u>Liquidation Analysis.</u> To confirm this Plan, the Court must find that all creditors will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.  In a chapter 7 liquidation, the general unsecured creditors would receive less than what they would receive under this Plan.

### <u>Chapter 7 Liquidation Analysis</u>

| Assets | Liquidation Value | |
|---|---|---|
| 205 Rose Road, Wesy Nyack, NY 10994 | $ | - |
| Cash, Bank Accounts, Investment, & Stock Accounts | $ | 30,961.00 |
| Retirement Account | $ | - |
| Life Insurance Policy | $ | - |
| Miscellaneous Household Furnishings, Wearing Apparel & Jewelry | $ | - |
| Firearms, hobby equipment, collectibles | $ | - |
| 100% Ownership of Grace Contracting & Development LLC | $ | - |
| 27.875% Ownership of 1003 Myrtle Estates, LLC (Owned by Grace Contracting) | $ | - |
| 75% Ownership of 200 East Erie LLC | $ | - |
| 100% Ownership of RC Real Estate Development LLC | $ | 175,000.00 |
| $15,000 Loan due to Debtor | $ | 15,000.00 |
| Bertussi Preferece Claim | $ | 106,743.22 |
| Total Assets | $ | 327,704.22 |
| *Less Costs Associated with Liquidation* | | |
| Chapter 7 Trustee Commission | $ | (19,635.22) |
| Chapter 7 Trustee Professionals | $ | (75,000.00) |
| Less Chapter 11 Administrative Payable Claims | $ | - |
| Less Chapter 11 Professional Fee Claims | $ | (65,000.00) |
| Less Priority Claims | $ | (1,617.00) |
| Net Available for Unsecured Creditors | $ | 166,452.00 |
| **Projected Distribution in Chapter 7 Liquidation** | | **3.50%** |

A chapter 7 liquidation would result in an approximate 3.5% distribution, less than half of what they are expected to receive under this Plan.  Therefore, the Plan which proposes an estimated 8% distribution to the general unsecured creditors, no creditor would receive any greater recovery under a Chapter 7 liquidation than the distribution proposed herein.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     Distribution Agent. If the Plan is confirmed under § 1191(b), the SubChapter V Trustee shall be the Disbursing Agent.  If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the Disbursing Agent.

8.2     Manner of Distributions under the Plan. Distributions to be made pursuant to the Plan shall be made by check drawn on an account at a banking institution that is an authorized depository institution in the Southern District of New York and mailed to the Distribution Address of the recipient of the Distribution. Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed. Payments to Class 6 General Unsecured Claims less than one hundred ($100.00) dollars shall be made in full on the Effective Date instead of quarterly distributions.

8.3     Rounding to the Nearest Dollar. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

8.4     Unclaimed Cash. Except as otherwise provided herein, in the event any claimant fails to cash any Distribution within six (6) months from the date such Distribution is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the Claim for which such Distribution was distributed shall be treated as a disallowed Claim. All unclaimed Distributions shall be redistributed with the next distribution.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

9.1     Time for Objections to Claims. Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Debtor up to and including sixty (60) days following the entry of the Confirmation Order, with such objections being subject to notice and an opportunity to object. With respect to disputed Claims, the Distribution Agent will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of Claim.

9.2     Resolution of Disputed Claims. Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in her sole discretion, without notice to any party in interest.

9.3     Payments. Payments and Distributions to each Holder of a disputed Claim that ultimately becomes an allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the later of the Distribution Date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

**ARTICLE X**
**DISCHARGE AND INJUNCTION**

10.1    Full and Final Satisfaction. All payments, Distributions and transfers of Cash or property under the Plan are in full and final satisfaction, settlement and release of all Claims related to the Chapter 11 Case against the Debtor and the Estate.

10.2    Discharge Under §1141(d)(5) of the Bankruptcy Code. Upon completion of all payments under this Plan, or such other order of the Bankruptcy Court finding that that value of property distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would have been paid if the estate of the Debtor had been liquidated under chapter 7 on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) of a kind specified in § 1141(d)(2) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. After the Effective Date of the Plan, Claims against the Debtor will be limited to the debts described in clauses (i) through (ii) of the preceding sentence. Subsequent to the Effective Date, the Debtor may choose to close this Chapter 11 Case, and thereafter re-open this Chapter 11 Case upon completion of the plan payment for the purpose of entry of a discharge order.

Except as otherwise provided in the Plan, the Confirmation Order, or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case, and (c) the completion of Distributions to Holders of Allowed Claims in accordance with the Plan, all Claims against the Debtor and Reorganized Debtor shall be discharged and released in full under §1141(d)(5) of the Bankruptcy Code.  All persons and entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

10.3    Nondischargeable Claims. Pursuant to § 1141(d)(2) of the Bankruptcy Code, the Debtor will not be discharged from any debt excepted from discharge under § 523 of the Bankruptcy Code to which a timely action to object to such discharge was commenced and has not been granted by Final Order.

10.4    Pre-Discharge Injunction. Except as otherwise expressly provided in the Plan, the Confirmation Order, or such other order of the Bankruptcy Court that may be applicable, all persons or entities who have held, hold or may hold Claims or any other debt or liability that is to be discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtor's Estate, or their income, properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any

judgment, award, decree or order against, the Estate, or its respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or against their income, property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, or the Reorganized Debtor, or against their respective property or interests in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan, in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan; (iv) Distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan. Nothing herein shall limit or impair (i) the United States Government or any of its agencies from enforcement of the laws and regulations of the United States, and (ii) New York State government's police powers to enforce criminal, regulatory, and environmental laws.

10.5    Exculpation. To the extent permitted under Section 1125(e) of the Bankruptcy Code, except as otherwise specifically provided in this Plan, with respect to post-Petition Date conduct only, the Debtor and her attorneys and advisors, each in their respective capacities as such (the "Exculpated Party") shall have or incur, and each Exculpated Party is hereby released and exculpated from any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation, or consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan (the "Exculpated Claims"). Each Exculpated Party has, and upon the Effective Date shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or distributions made pursuant to this Plan. From and after the Effective Date and upon the distributions contemplated in the Plan, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to Article X of the Plan; provided, however, that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties with respect to their obligations or covenants arising from bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Upon confirmation of the Plan, creditors will be unable to pursue any claims that are satisfied, enjoined or subject to exculpation under the Plan, but creditors may pursue claims against the Debtor that may arise in the future, or pursuant to the Plan. Nothing in the Plan shall limit the malpractice liability of the Debtor's professionals to the Debtor, in line with Rule 1.8(h) of the New York Rules of Professional Conduct.

**ARTICLE XI**

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1     Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed before the date of the order confirming this Plan, upon the effective date of this Plan, except for the operating agreements for 200 East Erie, Grace Contracting, and RC Real Estate which shall be assumed under the Plan. **If you are a party to a lease or contract to be assumed or rejected and you object to the treatment of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan. ANY REJECTION DAMAGE CLAIM OR CLAIM TO A CURE PAYMENT MUST ALSO BE FILED BY SUCH DEADLINE.**

### ARTICLE XII
### DEFAULT

12.1     Failure of the Debtor to make the Distributions required under the Section 6.1 of the Plan within thirty (30) days of the deadlines set forth therein, or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of ten (10) days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code. In the event of an uncured default hereof, any creditor or party in interest may seek conversion or dismissal of this Chapter 11 Case.

### ARTICLE XIII
### RETENTION OF JURISDICTION

13.1     Following the Effective Date of the Plan, the Bankruptcy Court shall retain such jurisdiction over this case as is legally permissible, including such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation: (i) to hear and determine all Claims against the Debtor and any objections thereto; (ii) to enforce and interpret the terms and conditions of the Plan; (iii) to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan; and (iv) to enter a final decree to close this Chapter 11 Case.

### ARTICLE XIV
### GENERAL & MISCELLANEOUS PROVISIONS

14.1     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

14.2     Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other

provision of the Plan.

14.3    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

14.4    <u>Article and Section References</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

14.5    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

14.6    <u>Revocation or Withdrawal of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing. If the Debtor so revokes or withdraws the Plan <u>in its entirety</u>, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. If the Debtor so revokes or withdraws the Plan <u>in part</u>, then only the part of the Plan so revoked or withdrawn shall be null and void.

14.7    <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may be required.  After the Effective Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with §1127 of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan. The Plan may not be materially modified after entry of the Confirmation Order without notice and an opportunity to object to such modification or amendment.

14.8    <u>Avoidance and Recovery Actions</u>. The Debtor intends to prosecute any and all causes of action under §§ 510, 544, 547, 548, 550 and 553 of the Bankruptcy Code, except for purposes of setoff, specifically including the Bertussi Preference Claim.

14.9    <u>Deletion of Certain Classes</u>. Any class of Claims that is not occupied as of the date of the commencement of the Confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all purposes.

14.10    <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

14.11    <u>Further Actions</u>. The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence

the terms and conditions of the Plan and the transactions contemplated herein and therein.

14.12    <u>Status Reports</u>. Subsequent to the Effective Date of this Plan, the Debtor shall file with the Bankruptcy Court post-Confirmation status reports detailing its progress toward a Final Decree in this case. Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the case.

14.13    <u>Reorganized Debtor's Filing Requirements</u>. Within three (3) business days' (i) after the occurrence of the Effective Date, the Debtor shall file with the Bankruptcy Court a notice of the Effective Date, and (ii) after substantial consummation of the Plan, file with the Bankruptcy Court a notice of substantial consummation. Pursuant to Local Bankruptcy Rule 3022-1, the Debtor shall file with the Court a report on the proposed closing of this Chapter 11 Case and a motion for a final decree (on notice to the Office of the U.S. Trustee) within fourteen (14) days following the full administration of the Debtor's estate.

14.14    <u>Notices</u>. Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, or by email, addressed as follows:

Julie Cvek Curley, Esq.
Kirby Aisner & Curley LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
Email: jcurley@kacllp.com

All payments, notices and requests to Claimants, shall be sent to them at their last known address. The Debtor or any Claimant may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt, which receipt shall be deemed to be on the third business day after mailing.

Dated:  West Nyack, New York
        June 26, 2024

By: */s/ John R. Cervini*
        John R. Cervini

Dated: Scarsdale, New York
        June 26, 2024

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
jcurley@kacllp.com

By: */s/ Julie Cvek Curley*
        Julie Cvek Curley, Esq.